UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN E. MAYS,<br><br>                Plaintiff,<br><br>     v.<br><br>TODD STOBIE, MIKE RIGNEY, DONALD BLAIR, JOHN HILDERBRAND, JOE RODRIGUEZ, DALE BUTTREY, JACK MCGEE, RICHARD SMITH, GABE RICHARDSON, JACLYN MARTIN, JAMIE ROMER, JODY BROWN, JACOB GUNTER, NEZ PERCE COUNTY, a political subdivision of the State of Idaho, and the CITY OF LEWISTON, a municipality incorporated in the State of Idaho,<br><br>           Defendants. | Case No. 3:08-cv-00552-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

**INTRODUCTION**

Following a six-day trial, the jury in this case returned a special verdict finding

Defendant Donald Blair liable for using excessive force against Plaintiff Kevin Mays, and

awarded damages in the amount of $1,954.27. (Dkt. 212.) This matter is before the Court

on Plaintiff's Petition for Award of Attorney Fees, (Dkt. 218), in which Plaintiff seeks

attorney's fees under 42 U.S.C. § 1988 in the amount of $439,678.26. Defendant Blair

**REPORT AND RECOMMENDATION - 1**

filed an objection to Plaintiff's request for fees. (Dkt. 226.) The Court heard oral arguments on Plaintiff's petition on December 12, 2011. Having considered the parties' arguments, briefing, affidavits and other materials submitted in support of or in opposition to Plaintiff's petition, and for the reasons set forth below, the undersigned will recommend that the District Judge grant Plaintiff's petition in part and award $84,791.41 in attorney's fees.

## BACKGROUND

The facts and procedural history of this case are well known to the parties and the Court repeats them here only as necessary to resolve the fee petition. Plaintiff Kevin Mays brought this civil rights action under 42 U.S.C. § 1983 against Officers Donald Blair, Mike Rigney, and Todd Stobie of the Lewiston Police Department and Deputies Joe Rodriguez and John Hildebrand of the Nez Perce County Sheriff's Department for events that occurred on December 23, 2006.[1] On that date, the Lewiston Police Department received a call from Angel Harrell (Plaintiff's then girlfriend) who reported that Plaintiff may be suicidal and possibly in possession of a firearm. In response to the call, and acting in furtherance of their community care-taking function, Officers Rigney, Stobie, and Blair, and Deputies Hildebrand and Rodriguez removed Plaintiff's children from his home–placing them in the custody of Ms. Harrell–and confronted Plaintiff, who was located near the outskirts of Lewiston.

---

[1] In his original complaint, (Dkt. 1), Plaintiff also named the City of Lewiston and Nez Perce County as defendants.

**REPORT AND RECOMMENDATION - 2**

During the confrontation, Plaintiff was forced to the ground, handcuffed, and searched. The search revealed that Plaintiff was not in possession of a firearm. When Plaintiff attempted to stand up after the search was complete, which the officers construed as resistence, one of the officers placed his knee in Plaintiff's back while another pressed Plaintiff's face into the ground and another used his Taser on Plaintiff. Plaintiff sustained a laceration on his head and was taken in an ambulance to the hospital. Plaintiff also received a citation for resisting arrest. After Plaintiff was tried for and acquitted of resisting arrest, he filed suit under 42 U.S.C. § 1983, claiming that he was wrongfully arrested and that the officers used excessive force in violation of the Fourth Amendment. Plaintiff also pled state law claims, including battery and intentional infliction of emotional distress.

Plaintiff's initial complaint related only to the above incident. He later sought, and was granted, leave to amend his complaint to include claims in connection with a second incident that occurred on November 17, 2008, while Plaintiff was incarcerated at the Nez Perce County Jail on charges unrelated to the first incident. The amended complaint asserted claims against members of the Nez Perce County Sheriff's Department who allegedly beat Plaintiff or neglected him during his incarceration. The second incident did not involve the City of Lewiston or Officers Stobie, Rigney, Mundell, or Blair. In his motion for leave to amend, Plaintiff argued that, because he suffered head injuries during both incidents, and "the defendants responsible for the First Incident w[ould] almost

certainly blame the defendants responsible for the Second Incident, and vice versa[,] . . . [t]rying the[] incidents separately would create a substantial risk of incurring double, multiple, or otherwise inconsistent and inequitable [results]." (*Mem. in Supp. of Pl.'s Mot. for Leave to Amend Compl.* at 3, Dkt. 20-2.)[2]

Plaintiff also attempted to amend his complaint to add claims related to a third incident that occurred on June 8, 2009, in which Plaintiff allegedly was harassed at his home by a Lewiston police officer. (*Pl.'s Second Mot. to Amend Compl.*, Dkt. 44.) Plaintiff later withdrew his motion to include claims related to the third incident. (*Decl. of Jason Wood re: Mot. to Amend*, Dkt. 67.)

Prior to trial, Plaintiff's claims were significantly narrowed. Early in the litigation, the parties stipulated to the dismissal of Officer Joedy Mundell, (Dkt. 38), and Deputy Dustin Hibbard. (Dkt. 46.) As a result of dispositive motions, both governmental entities were dismissed, all claims related to the second incident were dismissed, and all other causes of action were dismissed with the exception of Plaintiff's excessive force claim related to the first incident. The case proceeded to trial on Plaintiff's excessive force claim against Officers Stobie, Rigney, and Blair, and Deputies Hilderbrand and Rodriguez. Officer Stobie was dismissed by the Court as a result of a motion for judgment as a matter of law at the close of Plaintiff's case in chief. (Dkt. 208.)

---

[2] Plaintiff later sought leave to replace fictitiously designated defendants that were named in the amended complaint with the names of eight employees of Nez Perce County, all of whom were allegedly involved in the second incident. (Dkt. 71.) The Court partially granted Plaintiff's motion on December 7, 2010. (Dkt. 99.)

**REPORT AND RECOMMENDATION - 4**

At the close of the evidence, and after motions were addressed, closing arguments were made, jury instructions were given, the case was submitted to the jury and the jury was presented with a special verdict form. The special verdict form asked the jury to identify which, if any, of the individual officers and deputies had used excessive force. (Dkt. 212.) If the jury found any of the defendants had used excessive force, the special verdict form then asked the jury to identify what damages Plaintiff had suffered and left spaces open for the jury to fill in the amount of "Medical Expenses," "Other Non Economic Damages," and "Nominal Damages" as to each individual defendant. (*Id.*) The special verdict form also asked the jury to determine whether Plaintiff was entitled to an award of punitive damages.

Of the remaining four defendants, the jury found that only Officer Blair had used excessive force and awarded Plaintiff $1,954.27 for medical expenses. (Dkt. 212.) The Jury also found that Plaintiff was not entitled to an award of punitive damages. Plaintiff now seeks an award of attorney's fees under 42 U.S.C. § 1988 in the amount of $439,678.26.

## DISCUSSION

Under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the court, in its discretion, may award reasonable attorney's fees to the prevailing party in any action or proceeding brought to enforce the provisions of various civil rights statutes, including 42 U.S.C. § 1983. "Congress' intent in enacting § 1988 was to attract

**REPORT AND RECOMMENDATION - 5**

competent counsel to prosecute civil rights cases, where 'victims ordinarily cannot afford to purchase legal services at the rates set by the private market.'" *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)). Under the terms of the statute, the plaintiff must be a "prevailing party" to recover an award of attorney's fees. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotations omitted). The United States Court of Appeals for the Ninth Circuit has made clear that, "[e]ven in a case where the '[p]laintiff succeeded on only one of his many claims against Defendants,' . . . the district court must nonetheless calculate a reasonable fee." *Mendez*, 540 F.3d at 1128.

Generally, attorney's fees are calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate–known as the "lodestar" calculation–and then, if necessary, making adjustments to the lodestar figure based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.

1975),[3] that have not been subsumed in the lodestar calculation.[4] *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008).

Defendant Blair concedes that Plaintiff is a prevailing party within the meaning of § 1988. (*Def.'s Objection to Pl.'s Atty Fees* at 2, Dkt. 226.) He argues, however, that this case falls within the exception to the general rule for plaintiffs who achieve purely technical success or receive *de minimis* relief. Under this exception, the Court may forgo the lodestar analysis, *Morales v. City of San Rafael*, 96 F.3d 359, 362 (9th Cir. 1996), and Defendant Blair argues that the Court should significantly reduce the amount of requested fees–or deny the request in its entirety–because the amount of damages awarded by the jury in this case was minimal in comparison to the amount sought by Plaintiff. Alternatively, if the Court determines that the above exception does not apply, Defendant Blair argues that the time expended on the case and the hourly rates submitted by

---

[3] The twelve *Kerr* factors include: (1) the time and labor required; (2) the complexity of the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[4] "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996) (internal quotations and citations omitted).

**REPORT AND RECOMMENDATION - 7**

Plaintiff's counsel in connection with their request for fees are not reasonable and that the outcome of the case warrants a reduction in the amount of fees awarded. For the reasons discussed below, while the Court does not find that the outcome in this case brings it within the exception to the general rule for calculating attorney's fees, the Court does find that Plaintiff's requested fees are unreasonably high and will recommend that they be reduced.

1. **Plaintiff's success was neither "purely technical" nor "*de minimis*"**

In *Farrar v. Hobby*, 506 U.S. 103 (1992), the United States Supreme Court created an exception to the general rule governing a district court's calculation of attorney's fees in civil rights cases. "The Court held that 'nominal damages' cases in which the relief is *de minimis* are exempted from the general requirements that govern the calculation of attorney's fees, including the requirement that a lodestar first be calculated." *Morales*, 96 F.3d at 362 (citing *Farrar*, 506 U.S. at 116-18 (O'Connor, J., concurring). "The *Farrar* exception, which would allow the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is limited to cases in which the civil rights plaintiff 'prevailed' but received only nominal damages and achieved only 'technical' success." *Id.* at 362-63.

In this case, the jury found that Defendant Blair had used excessive force against Plaintiff and awarded $1,954.27 in compensatory damages for medical expenses incurred by Plaintiff. It is undisputed that the jury was instructed regarding nominal damages and

**REPORT AND RECOMMENDATION - 8**

was given the option of awarding nominal damages, rejecting that option.

Notwithstanding the award of compensatory damages, Defendant Blair contends that the

award of medical expenses in this case was *de minimis*, and that the Court may award low

fees or no fees at all under *Farrar*. The Court does not agree. The Ninth Circuit expressly

has cautioned the district courts from stretching the Supreme Court's holding in *Farrar*

beyond its scope. *See Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005).

*Farrar* carved out an exception to the congressional mandate contained in 42 U.S.C. §

1988–that the prevailing party in a civil rights action recuperate reasonable attorney's

fees–where the jury finds a technical constitutional violation and only awards nominal

damages. Here, Plaintiff's success can be considered neither purely technical nor *de*

*minimis*.

**2.     The Lodestar Calculation**

"The most useful starting point for determining the amount of a reasonable fee is

the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the

lodestar calculation. Plaintiff's attorney Jason Wood submits that he devoted 964 hours to

the case. He seeks attorney's fees for 819.8 hours of work (subtracting 144.2 hours of

work spent exclusively on the second incident) at $300 per hour. (*Dec. Of Jason Wood* ¶¶

15 and 16, Dkt. 219.) Plaintiff's attorney Gregory Rauch submits that he spent 750.40

hours on the case and seeks attorney's fees for 712.30 hours of work (subtracting 38.1

**REPORT AND RECOMMENDATION - 9**

hours of work spent exclusively on the second incident) at $250 per hour. (*Dec. Of Gregory Rauch* ¶ 17, Dkt. 220.) Plaintiff also seeks attorney's fees for work performed by two of Mr. Rauch's partners–Robert Magyar (34.6 hours at $200 per hour) and Brian Thie (13.7 hours at $200 per hour). (*Id.* at ¶¶ 19 and 20.) In sum, Plaintiff seeks $433,675 in attorney's fees plus $6,003.26 in costs not available under District of Idaho Local Rule 54.1(c)(1) - (9) (but which are available under § 1988) for a total of $439,678.26.

Defendant Blair argues that, even if the Court does not invoke the exception under *Farrar* for purely technical or *de minimis* success, the time expended and the hourly rates claimed by Plaintiff's attorneys are not reasonable and the fee award should be reduced to between 10 - 15 percent of the full amount requested due to Plaintiff's limited success. As more fully explained below, the Court agrees and will recommend that the fee award be reduced (although not to the extent requested by Defendant).

### A. *Hourly Rate*

Reasonable attorney's fees under § 1988 must be based upon a reasonable hourly rate. *See Hensley,* 461 U.S. at 433. The appropriate rate is the prevailing market rate "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). "[T]he burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience

and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff's counsel Jason Wood and Gregory Rauch both have submitted declarations in support of their petition for attorney's fees. In his declaration, Mr. Rauch states that he handles "[m]ostly divorce, misdemeanor and felony criminal matters at state level, bankruptcy, and small personal injury cases." (Dkt. 220 at 2.) Mr. Rauch has been a member of the Idaho State Bar since 2007, and he states that his customary rate is $175 per hour. (*Id*.) However, for more complicated matters, Mr. Rauch states that he charges $250 per hour, which is the rate he is seeking in this case. Mr. Rauch characterizes his role in this litigation as "second chair." It also is apparent from Mr. Rauch's declaration that, at the time of taking on this case, he was inexperienced in civil rights litigation, which, he indicates, is why he sought the assistance of more experienced counsel.

Mr. Wood has been a member of the Idaho State Bar since 1994. (Dkt. 219 at 2.) In his declaration, Mr. Wood indicates that, since 2001, his practice has focused "primarily on representing plaintiffs throughout the State of Idaho, including civil rights cases involving excessive use of force by police officers" and that he has tried several cases to judgment. (*Id*.) Mr. Wood characterizes this case as complex due to the number of parties involved, multiple incidents, and the uncertainty as to damages. He also indicates that, "[f]rom the beginning of our representation of Kevin Mays, he has been unable to pay me or co-counsel, Mr. Rauch, on an hourly basis, nor reimburse us for any of the [sic] our out-of-pocket costs incurred in prosecuting this case." (*Id*. at 6.) Based

upon "the rate of what counsel presently charge for federal civil rights litigation and what other attorneys with similar skill, reputation and experience charge in the Coeur d'Alene area for similar work[,]" Mr. Wood states that his hourly rate is $300 per hour.

Plaintiff's counsel also have submitted the declaration of Leander James in support of their fee petition. (*Dec. Of Leander L. James, VI*, Dkt. 221.) Mr. James is an attorney in Coeur d'Alene, Idaho, and specializes in complex civil litigation, including civil rights litigation. He has been a member of the Idaho Bar since 1993. He states that his "hourly fee schedule for plaintiff's litigation and trial work ranges from a minimum of $200/hr. to a maximum of $325/hr." (*Id*. at ¶ 5.) Mr. James indicates that his rate is based upon a number of factors, including the complexity of the case. (*Id*.) He states that, "[b]ased on my personal knowledge of the experience, expertise, and abilities of Mr. Wood and of prevailing and customary hourly fee rates in the Coeur d'Alene area for attorneys sharing similar experience, reputation, and expertise, in complex and difficult cases of this kind, it is my opinion that an hourly rate of $300.00 per hour at the present time is warranted under the circumstances and well within the range of customary rates of attorneys in this area." (*Id*. at ¶ 10.) Mr. James indicates that "the long delays in receiving compensation, and the inability of the plaintiffs to pay for costs, all make a substantial hourly fee appropriate." (*Id*. at ¶ 13.) Mr. James also opines that $250 per hour is a reasonable hourly rate for Mr. Rauch.

**REPORT AND RECOMMENDATION - 12**

In opposition to Plaintiff's motion for fees, and contrary to the declarations of Messrs. Wood, Rauch, and James, Defendant Blair contends that the case was not particularly complex, stating that the "case involved a 1-2 second 'scuffle' and raised the question of whether excessive force was used when Mr. Mays sustained a small laceration and a black eye." (*Def. Blair's Obj. to Pl.'s Att'y Fees* at 5, Dkt. 226.) Defendant contends that the only complications in this case were of Plaintiff's counsel's own making, stating that "[t]his case was <u>not</u> complex until the Plaintiff and/or his counsel tried to 'stretch' this case by adding a 'second' incident and claimed injuries which were not identified in the medical records." (*Id.*) (emphasis in original). Defendant's point is well taken and, as discussed more fully below, the Court will recommend that the hours spent on aspects of the case unrelated to the "first incident" not be included in the award of fees.

However, the Court does not fully agree with Defendant Blair's contention that this case involved no complexities. Contrary to Defendant Blair's characterization, the first incident did not involve a "garden variety" case of excessive force where officers are acting in their law enforcement capacity. Indeed, this case involved a somewhat murky situation in which the officers were acting pursuant to their community care-taking function. Moreover, the first incident involved multiple law enforcement officers from two different agencies and, due to the nature of the incident, Plaintiff was unable to identify which officer did what to him while he was on the ground. This scenario required

discovery outside the realm of what can be considered a garden variety excessive force case and warrants consideration in determining a reasonable fee award in this case.

Based on the above, the undersigned finds that Mr. Wood's hourly rate of $300 per hour is reasonable and will use that rate in determining the lodestar figure. However, based upon Mr. Rauch's experience and the materials filed in support of and in opposition to Plaintiff's motion for fees, the Court finds that Mr. Rauch's hourly rate should not exceed $175 per hour. This finding is based upon Mr. Rauch's limited experience (having only 4-5 years experience and little or no experience with the type of case at bar), his role in the litigation as second chair, Mr. Rauch's own customary hourly rate, and the prevailing rate in the community. The Court finds Mr. James' declaration particularly instructive on this issue, in which Mr. James indicates that his minimum rate in such cases is $200 per hour. Mr. James has been practicing over 20 years longer than Mr. Rauch and has substantial experience in this type of case. Mr. Rauch's claimed rate of $250 per hour is unreasonably high and the Court will base the lodestar figure for Mr. Rauch based upon an hourly rate of $175 per hour.

## B.    *Hours Reasonably Expended*

Under § 1988, prevailing parties may only be compensated for those hours of work that were "reasonably expended." *See Hensley*, 461 U.S. at 433-34. The moving party bears the burden of establishing the hours claimed and must carry that burden by submitting adequate documentation of those hours. *Id.* at 437. The Court will not grant a

fee award for "hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 433-34. It is well settled that a "plaintiff is entitled to recover attorney's fees even for claims on which she did not prevail, if they 'involve a common core of facts or are based on related legal theories.'" *Mendez*, 540 F.3d at 1125-26. Conversely, a plaintiff is not entitled to an award of fees for unsuccessful claims that were "unrelated to" the successful claims. *Hensley*, 461 U.S. at 434.

Mr. Wood states in his declaration that he "necessarily and reasonably devoted 964 hours of work to the prosecution of this case." (Dkt. 219 at 5.) Plaintiff, however, is not seeking reimbursement for time spent exclusively on the "second incident." Mr. Wood represents that he spent 144.2 hours exclusively on the second incident and therefore only seeks compensation for 819.8 hours. (*Id*.) Mr. Rauch represents that he spent 750.4 hours on the case and 38.1 hours exclusively on the second incident. Thus, Mr. Rauch seeks compensation for 712.3 hours of work.

Defendant Blair objects to the number of hours claimed by Plaintiff's attorneys on several grounds. Each will be addressed below.

### (1)   *Time Spent on Second Incident*

Plaintiff's counsel do not seek compensation for hours spent on the second incident. Defendant Blair contends, however, that Plaintiff's counsel have not excluded all of the hours spent on the second incident and seeks a reduction of 207.2 hours. In support of this argument, Defendant Blair has submitted two exhibits highlighting the

hours spent on the second incident by attorneys Wood and Rauch that Defendant contends should have been excluded. (*Time Attributable to Second Incident (Wood)*, *Exhibit A*, Dkt. 226-1 pp. 1-7; *Time Attributable to Second Incident (Rauch)*, Dkt. 226-1 pp. 8-11.)

Having carefully reviewed Plaintiff's counsel's billing records, the Court finds that a reduction of 207.2 hours of time spent on the second incident is warranted.[5] Defendant Blair has supplied the Court with a copy of Plaintiff's counsel's billing records, highlighting the hours spent on the second incident by Messrs. Wood and Rauch, and the Court will not go through the individual billing entries again here. However, the Court will recommend that Mr. Wood's hours be reduced by 186 hours and Mr. Rauch's hours be reduced by 21.2 hours.

**(2)     *Time Spent on Third Incident***

Like the hours claimed for the second incident, Defendant Blair argues that Plaintiff's counsel should not be compensated for hours spent working on the third incident.

As indicated above, Plaintiff sought leave to amend his complaint to include claims concerning a third incident in which Sergeant Piche of the Lewiston Police

---

[5]  This includes time for work relating to neurological damages. Plaintiff's attorneys have argued that the time spent on assessing Plaintiff's neurological damages cannot be allocated exclusively to either the first or second incidents because Plaintiff sustained head injuries during both incidents. At trial, however, Plaintiff's expert did not opine that Plaintiff sustained any neurological damages as a result of the first incident. The Court will recommend that the time spent on this issue be excluded.

Department allegedly harassed Mr. Mays. (*Second Mot. To Amend Complaint*, Dkt. 44.) Other than the fact that the third incident involved an officer from the Lewiston Police Department, the incident had no bearing on Plaintiff's claims concerning the first incident. Ultimately, Plaintiff withdrew his attempt to add a claim related to the third incident. (*Decl. of Jason Wood re: Mot. to Amend*, Dkt. 67.)

Defendant Blair has submitted an exhibit outlining the hours spent by Plaintiff's counsel on the third incident, which Defendant seeks to exclude. (*Time Attributable to Third Incident, Exhibit B*, Dkt. 226-1 pp. 12-13.) The exhibit shows that Mr. Wood spent 22.7 hours on the third incident and Mr. Rauch spent 2.3 hours on third incident. The Court agrees that the third incident was not factually or legally related to Plaintiff's successful claims and the hours spent on the incident should not be included in Plaintiff's award of attorney's fees. Mr. Wood's time will be reduced by an additional 22.7 hours and Mr. Rauch's time will be reduced by an additional 2.3 hours.

### (3)    *Claim Against Defendant Joedy Mundell*

Early in the litigation, the parties stipulated to the dismissal of Officer Joedy Mundell, who was named as a defendant in Plaintiff's initial complaint. The stipulation states that each party is to bear his or her own attorney's fees and costs concerning the dismissed claim. (*Stip. For Dismissal of Officer Joedy Mundell*, Dkt. 38.) Defendant Blair has pointed out that Mr. Wood billed 1.1 hours related to the claim against Officer Mundell and Mr. Rauch billed .2 hours related to the claim against Officer Mundell.

**REPORT AND RECOMMENDATION - 17**

Based upon the stipulation of the parties, the Court will recommend that these hours be subtracted from Plaintiff's claim for attorney's fees.

**(4)**    ***Time Spent Communicating and Responding to Discovery and Information from Nez Perce County***

Defendant Blair argues that the time spent on communications and responses to Nez Perce County's pleadings, motions, briefs and interaction with the County's attorney should be excluded from Plaintiff's award of attorney's fees. Defendant Blair seeks the exclusion of these hours based on the ground that the jury did not make any finding against the County or any of its deputies, and the Plaintiff did not prevail on those claims. The Court disagrees.

It is undisputed that Deputy Jose Rodriguez and Sgt. John Hilderbrand of the Nez Perce County Sheriff's Department were involved in the first incident and that Plaintiff brought suit against the officers and the County based on that involvement. Notwithstanding the fact that Plaintiff did not prevail against the County or officers Rodriguez or Hilderbrand, Plaintiff is entitled to attorney's fees for the hours spent on the claims against the County and its officers related to the first incident. *Mendez*, 540 F.3d at 1126 ("A plaintiff is entitled to recover attorney's fees even for claims on which she did not prevail, if they involve a common core of facts or are based on related legal theories.") Plaintiff's counsel have represented that they excluded the hours exclusively spent on the second incident and the Court has excluded additional hours pointed out by Defendant Blair that remained in Plaintiff's counsel's billing directly attributable to the

**REPORT AND RECOMMENDATION - 18**

second incident.

### (5)   *Reduction for Duplicative and Excessive Hours*

Defendant Blair argues that some of the hours claimed by Plaintiff's attorneys are either duplicative or excessive. Specifically, Defendant points out that Mr. Wood and Mr. Rauch both claimed time for attending the depositions of the same witnesses. Defendant also argues that the following claimed hours are excessive: 36 hours spent by Mr. Rauch preparing the initial complaint; 24 hours spent by Mr. Rauch working on closing argument; and 24 hours spent preparing for closing argument by Mr. Wood.

Plaintiff agrees that he should not receive an award of fees for time Mr. Rauch spent on depositions that Mr. Wood also attended. Similarly, Plaintiff does not object to reducing Mr. Rauch's time for the initial complaint to 10 hours. However, Plaintiff does take issue with Defendant Blair's argument that the time spent on closing arguments was excessive. On this issue, the Court will defer to Plaintiff's counsel's judgment. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case . . . .").

Based on the above, and having reviewed Defendant Blair's exhibits highlighting the hours he claims are excessive or duplicative, (Dkt. 226-2 pp. 7-8), the Court agrees that 38.1 hours should be excluded from Mr. Rauch's time. The Court, however, does not

agree that 18 hours should be excluded from Mr. Wood's time.[6]

    **(6)**    ***Mr. Wood's Travel Time***

The facts giving rise to this litigation occurred in North Idaho. After unsuccessfully seeking local lead counsel to help him with the case, Mr. Rauch accepted the assistance of Mr. Wood, who lives in Southeastern Idaho. It appears that Mr. Wood made approximately eight trips from Idaho Falls, Idaho, to North Idaho in preparation for this case. Mr. Wood drove on all but one of these trips–each taking approximately eight hours. Defendant Blair objects to these hours, arguing that it was unnecessary for Mr. Wood to travel to North Idaho because co-counsel already was located there. Defendant Blair also argues that Mr. Wood's driving time is excessive–pointing out that Mr. Wood flew to Lewiston on one occasion and that it only took five hours as opposed to eight.

The Court disagrees with Defendant Blair's suggestion that Mr. Wood's time in North Idaho should be entirely excluded because co-counsel was already located there. The Court has recognized that Mr. Rauch was inexperienced in this matter and adjusted his hourly rate accordingly. The fact that Mr. Wood traveled to North Idaho to prepare for this case is not in itself unreasonable. However, the Court does agree that the driving time is excessive and each trip to and from North Idaho will be reduced to five hours, which is the time it took Mr. Wood to fly to Lewiston. Thus, having reviewed Defendant Blair's

---

    [6] Defendant Blair also states that 2.8 hours claimed by Mr. Wood appear to be clerical errors and that 4.5 hours claimed by Mr. Rauch appear to be clerical errors. The Court agrees, and these hours will be excluded.

**REPORT AND RECOMMENDATION - 20**

exhibit highlighting Mr. Wood's travel time, (Dkt. 226-2 at 9), the Court will subtract 35 hours attributable to Mr. Wood's travel time.

### (7)   *Time Spent on Criminal Prosecution*

Mr. Rauch seeks compensation for 67.6 hours spent working on Mr. Mays' criminal prosecution for resisting arrest. Plaintiff argues that "[i]t was necessary for Mays to obtain a dismissal of the criminal charges of resisting arrest; otherwise his section 1983 claim would have been barred." (*Reply to Def. Blair's Obj. To Pl.'s Att'y Fees* at 16, Dkt. 235.) While this may be true, the Ninth Circuit has indicated that these hours may not be claimed under § 1988. *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1989) (explaining that attorney's fees for time spent in defending criminal charge prior to bringing an action under § 1983 may be claimed as *damages* in the civil rights suit, but that they may not be claimed as attorney's fees under § 1988). Based on *Borunda*, the time Mr. Rauch spent on Plaintiff's criminal charge (67.6 hours) will be excluded.

### (8)   *Time Spent on Claims of On-Going Harassment*

Plaintiff's counsel have submitted entries seeking compensation for time spent pertaining to Plaintiff's allegations that he was being harassed continually by the Lewiston police. Defendant Blair seeks the exclusion of this time as it was unrelated to the claims on which Plaintiff prevailed. The Court agrees and will exclude 1.7 hours from Mr. Rauch's compensable time and 1.3 hours from Mr. Wood's compensable time.

**REPORT AND RECOMMENDATION - 21**

**(9)**    *Hours Claimed by Mr. Magyar and Mr. Thie*

Plaintiff seeks attorney's fees for work done by Mr. Rauch's partners Robert

Magyar and Brian Thie. Mr. Magyar claims a total of 34.6 hours at $200 per hour and Mr.

Thie claims 13.7 hours at $200 per hour. Defendant Blair objects to an award of

attorney's fees for both of Mr. Rauch's partners for several reasons. As explained below,

the undersigned will recommend that both attorneys' hours be reduced.

Concerning Mr. Magyar, 23.4 of the 34.6 hours claimed relate to Mr. Mays'

criminal proceedings. As discussed above, those hours are not compensable for the

purposes of 42 U.S.C. § 1988. The remaining 11.2 hours appear to relate to Plaintiff's

claims in this action. However, while Mr. Rauch's declaration states that Plaintiff is

seeking $200 per hour for Mr. Magyar's work, the billing entries attached to Mr. Rauch's

declaration show that Mr. Magyar billed at a rate of $150 per hour. The undersigned will

recommend that Plaintiff be awarded attorney's fees for 11.2 hours of Mr. Magyar's work

at $150 per hour.

With respect to Mr. Thie, Defendant Blair objects to three entries that appear to be

clerical errors. For instance, Mr. Thie claims 1.5 hours of work on June 24, 2011. This

case, however, was completed on June 23, 2011, and Defendant argues that this time

should be excluded. The Court agrees. Similarly, Mr. Thie claims 3 hours of work on

May 20, 2011, for work done reviewing and editing a motion for summary judgment. The

deadline for summary judgment briefing, however, had expired in April of 2011 and

**REPORT AND RECOMMENDATION - 22**

Plaintiff filed his reply to Defendants' motion for summary judgment on April 30, 2011. It will be recommended that these hours be excluded. Finally, Mr. Thie's billing sheet contains an entry for research on res ipsa loquitar [sic] and "joint liability theories." (Dkt. 220 at 36.) This entry appears to be related to another case and the 2.5 hours claimed for the work will be excluded. Thus, the undersigned will recommend that 8 of the 13.7 hours claimed by Mr. Thie be exluded and that Mr. Thie's time be compensated at $150 per hour–the same rate as Mr. Magyar.

      **(C)**     ***Results Obtained***

      In *Hensley v. Eckerhart*, 461 U.S. 242 (1983), the Supreme Court held that if the party seeking attorney's fees has not succeeded on all claims, the district court should award only an amount that is reasonable in relation to the results of the suit. If the results are excellent despite the less than complete success, the fee movant should obtain a fully compensatory fee, including compensation for hours devoted to the claims that were ultimately unsuccessful. *Id*. at 434. In the absence of "excellent" results, however, a fully compensatory fee may be excessive, and the district court should reduce the lodestar figure to account for the limited success. *Id*. There is no rule or formula for making a reduction; rather, it is within the discretion of the district court to determine a reasonable fee. *Id*. at 436-37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has

discretion in making this equitable judgment.")

Defendant Blair argues that Plaintiff's award of attorney's fees should be significantly reduced given his limited success. Defendant Blair "submits that this Court would be justified in awarding the Plaintiff 10 - 15 % or less of the amount of attorney fee claimed once the appropriate number of hours are identified." (*Def. Blair's Obj. To Pl.'s Att'y Fees* at 9) (emphasis in original). The undersigned agrees that Plaintiff's award of attorney's fees should be adjusted to account for Plaintiff's limited success, but not to the extent sought by Defendant Blair.

In his initial complaint, Plaintiff brought suit against four police officers employed by the City of Lewiston and three deputies employed by Nez Perce County Sheriff's Department. Plaintiff also sought relief against the City and the County. All of the claims in the initial complaint related to the first incident. Plaintiff's initial complaint sought $1.5 million in compensatory, punitive, incidental, and consequential damages. Plaintiff later amended his complaint, however, and did not seek any specific amount.

The case proceeded to trial against five officers involved in the first incident. During closing arguments, Plaintiff's counsel suggested that Mr. Mays' general damages may be worth $200,000 to $300,000. The jury found that only Officer Blair had used excessive force and the jury awarded Plaintiff $1,954.27 in compensatory damages for medical expenses.

**REPORT AND RECOMMENDATION - 24**

Defendant Blair suggests that an 85 - 90% reduction is appropriate in this case. In support of this contention, Defendant Blair points out that Plaintiff only succeeded against one of eight defendants, which is a 12.5% success rate. Defendant Blair also points out that the initial figure of $1.5 million requested in comparison with the $1,956.27 recovered is 0.13%. The Court finds that the results obtained in this case cannot be considered "excellent" and that a fully compensatory fee would be excessive in this case under *Hensley*. The question is how much the award should be reduced to account for Plaintiff's limited success.

The Court does not agree that Plaintiff's award should be reduced by 85 - 90%. The verdict against Defendant Blair finding that he had used excessive force during the welfare check conferred a benefit on the public and possesses some value. As the Ninth Circuit found in *Morales v. City of San Rafael*, the litigation in this case served the significant public policy interest "of helping to protect [Plaintiff] and persons like him from being subjected to similar unlawful treatment in the future" and the verdict "constitutes a warning to law-enforcement officers not to treat civilians unconstitutionally." 96 F.3d at 364-65.

The Court finds that the percentages provided by Defendant Blair are a useful starting point. Plaintiff succeeded against one of eight defendants equaling 12.5% and on one claim out of six equaling 16.66%. Using these figures as a starting point and giving Plaintiff a bump in fees in recognition of the public benefit conferred by the verdict in this

**REPORT AND RECOMMENDATION - 25**

case, the Court will recommend that the lodestar calculation include a 75% reduction to account for Plaintiff's limited success.

Taking into consideration the reductions outlined above and the reduction for limited success, the Court will recommend a lodestar calculation as follows:

*Jason Wood*

964 total hours claimed
- 186 (Second Incident)
- 22.7 (Third Incident)
- 1.1 (claim against Mundell)
- 2.8 (clerical errors)
- 35 (excessive travel time)
- 1.3 (on going harassment)
_____

715.1 Revised total hours

715.1 x $300 per hour = $214,530.00 x 0.25 for limited success adjustment

= $53,632.50

*Gregory Rauch*

750.40 total hours claimed
- 21.2 (Second Incident)
- 2.3 (Third Incident)
- 0.2 (claim against Mundell)
- 38.1 (duplicative or excessive hours)
- 4.5 (clerical errors)
- 67.6 (criminal case)
- 1.7 (on going harassment)
- 34.6 (Mr. Magyar's hours)
- 13.7 (Mr. Thie's hours)
_____

566.5 Revised total hours[7]

566.5 x $175 per hour = $99,137.50 x 0.25 for limited success adjustment

= $24,784.40

*Robert Magyar*

34.6 total hours claimed
- 23.4 (criminal case)
_____

11.2 Revised total hours

11.2 x $150 per hour = $1,680.00 x 0.25 for limited success adjustment

= $420

*Brian Thie*

13.7 total hours claimed
- 7 (clerical errors)
_____

6.7 Revised total hours

6.7 x $150 per hour = $1,005.00 x 0.25 for limited success adjustment

= $251.25

$79,088.15 Total Lodestar Figure

$79,088.15 + $5,703.26 (adjusted costs)[8] = $84,791.41 (total recommend attorney's

_____

[7] Because the Court has determined that Messrs. Magyar and Thie are entitled to an hourly rate different from that of Mr. Rauch, the Court has completely deducted their hours from Mr. Rauch's lodestar calculation and reassesses them according to their own rate below.

[8] This figure represents adjusted costs recoverable under § 1988 but not taxable as costs under Local Rule 54.1. Defendant Blair objected to Mr. Rauch claiming service costs, which are provided for under the Federal Rules. The Court agrees that this item

fee award)

## **RECOMMENDATION**

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

Plaintiff's Petition for Award of Attorney Fees (Dkt. 218) be **GRANTED IN PART** and that Plaintiff be awarded **$84,791.41** in attorney's fees and costs under 42 U.S.C. § 1988.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: February 14, 2012

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge

_____

should not have been included and has subtracted $300 from Plaintiff's costs. The undersigned has reviewed the remainder of Plaintiff's non-taxable costs and finds them compensable.

**REPORT AND RECOMMENDATION - 28**